UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICOLE T. WORTMAN and SHANE W. WORTMAN, individually, and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES LLC,<br><br>                      Defendant. | Case No.   1:20-cv-03742 |

**CLASS ACTION COMPLAINT**

**NOW COME** Plaintiffs, NICOLE T. WORTMAN and SHANE W. WORTMAN, individually, and on behalf of all others similarly situated, by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 23 asserting the following claims against Defendant, RUSHMORE LOAN MANAGEMENT SERVICES LLC:

**NATURE OF ACTION**

1. This action is brought pursuant to Fed. R. Civ. P. 23 by Plaintiffs, individually, and on behalf of all others similarly situated, seeking redress for Defendant's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. and violations of the Bankruptcy Discharge Injunction, 11 U.S.C.§524 *et seq.*

**JURISDICTION**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 with respect to the FDCPA claims.

1

3. This Court has jurisdiction over the bankruptcy claims pursuant to 28 U.S.C. §1334(a) and (b).

## VENUE

4. Venue is proper in this judicial district as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

5. NICOLE T. WORTMAN and SHANE W. WORTMAN ("Plaintiffs") are natural persons, who at all times relevant resided in this judicial district.

6. RUSHMORE LOAN MANAGEMENT SERVICES LLC ("Defendant") is a foreign limited liability company with its principal place of business located in Irvine, California.

7. Defendant is a national mortgage servicer that services hundreds of thousands of mortgage loans nationwide. Through the course of servicing mortgage loans, Defendant is in constant contact with consumers regarding the statuses of their mortgage loans.

## FACTUAL ALLEGATIONS

8. On March 3, 2006, Plaintiffs executed a mortgage in favor of ABN AMRO Mortgage Group, Inc. ("Mortgage").

9. The Mortgage secured the purchase of Plaintiffs' former principal residence located at 24633 Lincolnway Street, Plainfield, Illinois 60544 ("Property").

10. The Mortgage secured the repayment of an indebtedness evidenced by a promissory note in the amount of $279,000.00 ("Loan").

11. On or before August 15, 2007, ABN AMRO Mortgage Group, Inc. assigned and transferred the Loan to Lasalle Bank Midwest, N.A.

12. Shortly thereafter, the Loan was transferred to Bank of America, N.A. ("Bank of America").

13. On October 1, 2016, Plaintiffs defaulted on the Loan by failing to make monthly payments pursuant to the terms of the Loan.

14. On November 30, 2016, Plaintiffs filed a Chapter 13 bankruptcy case in the Bankruptcy Court for the Norther District of Illinois, Case No. 16-37931.

15. Bank of America was served with notice of Plaintiffs' bankruptcy case.

16. Plaintiffs' bankruptcy schedules listed Bank of America as having a secured claim in amount of $274,191.00.

17. On November 30, 2016, Plaintiffs filed their Chapter 13 Plan.

18. Plaintiffs' Chapter 13 Plan proposed to surrender the Property to Bank of America in full satisfaction of its claims.

19. Bank of America did not object to Plaintiffs' Chapter 13 Plan.

20. On January 20, 2017, Plaintiffs' Chapter 13 Plan was confirmed by the Bankruptcy Court.

21. Plaintiffs performed all their obligations as set forth in their Chapter 13 Plan.

22. Accordingly, on September 11, 2017, Plaintiffs were granted a discharge pursuant to section 1328(a) of the United States Bankruptcy Code.

23. Plaintiffs' bankruptcy discharge extinguished Plaintiffs' obligations and personal liability on the Loan and Mortgage.

24. Bank of America was served with the Discharge Order entered in Plaintiffs' bankruptcy case.

25. At some point after Plaintiffs' bankruptcy discharge, Defendant obtained servicing rights to the Loan.

26. The Loan was in default at the time Defendant obtained servicing rights to the Loan.

27. On June 20, 2018, U.S. Bank National Association, the owner of the Loan, filed a foreclosure action against Plaintiffs and the Property in the Circuit Court of Will County, styled 2018-CH-001030, *U.S. Bank National Association v. Nicole T. Wortman et al.* ("foreclosure action").

28. Consistent with Plaintiffs' intention to surrender the Property, Plaintiffs did not defend the foreclosure action.

29. Throughout 2018, Defendant sent Plaintiffs mortgage statements and other written correspondences which improperly attempted to collect payment on the discharged Loan.

30. As a result of Defendant's collection activity on the discharged Loan, Plaintiffs filed two lawsuits against Defendant seeking redress for Defendant's unlawful collection activity and to compel Defendant to cease collection on the discharged Loan ("previous litigation").

31. On January 24, 2019, the Property was sold pursuant to a judgment in the foreclosure action for $328,199.34.

32. On February 26, 2019, the court in the foreclosure action confirmed the sale of the Property, ending the foreclosure action.

33. The sale of the Property and the completion of the foreclosure action extinguished the Mortgage on the Property, thus discharging Plaintiffs of their contractual obligations as set forth in the terms of the Loan and Mortgage.

34. In December 2019, Plaintiffs and Defendants reached a settlement which resolved the previous litigation between Plaintiffs and Defendant.

35. On February 12, 2020, over one year after the Property was sold through the foreclosure action, Defendant sent Plaintiffs a letter stating that it has purchased property insurance for the Property on Plaintiffs' behalf and assessed the Loan the cost of the insurance ("Insurance Letter"). *See* attached Exhibit A, pg. 1.

36. Specifically, the Insurance Letter stated, in pertinent part:

"Because we did not have evidence that you had hazard insurance on [the Property], we bought insurance on your property and ***added that cost to your mortgage loan account***." *Id.* (emphasis added)
……………….

"The cost of this policy will be ***charged to you and you will be responsible to pay such amounts***." *Id.* at pg. 2. (emphasis added)

37. The Insurance Letter further stated that Defendant "is a Debt Collector, who is ***attempting to collect a debt***." *Id.* at pg. 3. (emphasis added)

38. On February 18, 2020, Defendant sent Plaintiffs a letter advising Plaintiffs that the interest rate on the Loan was changing ("Interest Rate Change Letter"). *See* attached Exhibit B, pg. 1.

39. Specifically, the Interest Rate Change Letter stated, in pertinent part;

"Under the terms of your Adjustable-Rate Mortgage (ARM), any applicable addendums and/or modifications (collectively, loan agreements), your Interest Rate (IR) and/or Payment has been in effect for 12 month(s). Your interest rate and mortgage payment will change effective May 1, 2020. Your next scheduled interest rate adjustment will occur in 12 month(s). Your next scheduled payment change will occur in 12 month(s). A change in your interest rate may also result in a change in your mortgage payment." *Id.* at pg. 1.

40. The Interest Rate Change Letter further stated (1) that Plaintiffs' new mortgage payment is $2,539.77; (2) that the payment was "Due on May 1, 2020"; and (3) that Defendant "is a Debt Collector, who is ***attempting to collect a debt***." *Id.* at pgs. 1-2. (emphasis added)

5

41. The Interest Rate Change Letter further threatened to report derogatory information on Plaintiffs' credit reports. *Id.* at pg. 2.

42. Specifically, the Interest Rate Change Letter stated, in pertinent part:

**LEGAL NOTIFICATION**: Rushmore Loan Management Services LLC may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report." *Id.* at pg. 2.

## DAMAGES

43. Plaintiff have been repeatedly harassed by Defendant and its attempts to collect a debt that was discharged in 2017.

44. Plaintiffs suffered from emotional distress and mental anguish as a result of Defendant's unlawful attempts to collect payment on the Loan as Plaintiffs were led to believe their bankruptcy discharge had no legal effect and that they were still personally liable on the Loan despite the fact the Loan was discharged in their bankruptcy and the Property was sold through the foreclosure action.

45. Moreover, Plaintiffs suffered significant emotional distress as a result of Defendant's threat to report derogatory information on their credit reports, causing Plaintiffs to regularly check their credit reports to make sure Defendant was not reporting derogatory information on the same.

46. Defendant's conduct is especially egregious in light of the fact that Plaintiffs have already brought multiple lawsuits against Defendant for the identical conduct complained of herein.

47. As demonstrated by Defendant's continued unlawful attempts to collect payment on the Loan, Plaintiffs have been denied the "fresh start" contemplated by the Bankruptcy Code.

48. Plaintiffs were forced to file this lawsuit to compel Defendant to cease its unlawful collection practices.

## CLASS ALLEGATIONS

49. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

50. Plaintiffs brings this action pursuant to Fed. R. Civ. P. 23, individually, and on behalf of all others similarly situated ("Putative Class").

51. The Putative Class is defined as follows:

> All persons within the State of Illinois to whom (a) within the one (1) year prior to the filing of the original complaint and during its pendency; (b) received a correspondence from Defendant demanding payment on a mortgage loan; (c) for purposes of collection upon a consumer debt; (d) that was discharged in a Chapter 7 or Chapter 13 bankruptcy proceeding.

52. The following individuals are excluded from the Putative Class: (1) any Judge or Magistrate Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

### A. Numerosity:

53. The exact number of members of the Putative Class is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable.

54. Members of the Putative Class will be objectively identified from records of Defendant to be gained in discovery.

55. Upon information and belief, Defendant services mortgage loans for thousands of consumers who fall into the definition of the Putative Class.

**B. Commonality and Predominance:**

56. There are many questions of law and fact common to the claims of Plaintiffs and the Putative Class and those questions predominate over any questions that may affect individual members of the Putative Class.

**C. Typicality**

57. Plaintiffs' claims are typical of members of the Putative Class because Plaintiffs and members of the Putative Class are entitled to damages as result of Defendant's conduct.

**D. Superiority and Manageability**

58. This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

59. The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

60. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

61. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

**E. Adequate Representation:**

62. Plaintiffs will adequately and fairly represent and protect the interests of the Putative Class.

63. Plaintiffs have no interests antagonistic to those of the Putative Class, and Defendant has no defenses unique to Plaintiffs.

64. Plaintiffs have retained competent and experienced counsel in consumer class action litigation.

## **CLAIMS FOR RELIEF**

**COUNT I:**
**Fair Debt Collection Practices Act (15 U.S.C. §§ 1692 *et seq*.)**
**(On behalf of Plaintiffs and the Members of Putative Class)**

65. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

66. Plaintiffs are "consumers" as defined by 15 U.S.C. § 1692a(3) as they are natural persons obligated or allegedly obligated to pay a debt.

67. The Loan is a "debt" as defined by 15 U.S.C. § 1692a(5) as it was incurred for personal, family, or household purposes.

68. Specifically, the Loan was incurred to fund the purchase of Plaintiffs' principal residence.

69. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because (1) it uses instrumentalities of interstate commerce and the mail in its business and (2) the principal purpose of Defendant's business is the collection of debt owed or due or asserted to be owed or due another.

70. Pursuant to 11 U.S.C. § 524(a)(2), a discharge order "operates as an injunction" against acts to collect debts discharged in bankruptcy.

71. "A demand for immediate payment while a debtor is in bankruptcy is 'false' in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. §362)

9

or the discharge injunction (11 U.S.C. § 524), it is not." *Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004).

### a. Violations of 15 U.S.C. § 1692e

72. Section 1692e of the FDCPA provides:

> A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> > (2) The false representation of –
> >
> > > (A) the character, amount, or legal status of any debt; or
> > >
> > > (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> >
> > (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> >
> > (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
> >
> > (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>
> 15 U.S.C. §§ 1692e, e(2), e(5), e(8) and e(10).

73. Defendant violated §1692e by making false representations regarding the Loan.

### a. **Interest Rate Change Letter**

74. Defendant violated § 1692e(2)(A) by misrepresenting the character, amount, or legal status of the Loan because no payments were due on the Loan at the time Defendant made a payment demand to Plaintiffs through the Interest Rate Change Letter by virtue of (1) Plaintiffs' bankruptcy discharge, and (2) the sale of the Property and completion of the foreclosure action.

75. The completion of the foreclosure action extinguished the Loan and Mortgage and permanently severed the relationship between Plaintiffs and the Property.

76. Accordingly, no payments were contractually due at the time Defendant sent the Interest Rate Change Letter.

77. Defendant violated § 1692e(10) by falsely representing that the Loan was collectible at the time of the demand for payment when in fact the Loan was not collectible against Plaintiffs personally by virtue of (1) Plaintiffs' bankruptcy discharge, and (2) the sale of the Property and completion of the foreclosure action.

78. At the time Defendant attempted to collect payment on the Loan, there was no relationship between Plaintiff and Defendant as the Mortgage was extinguished upon completion of the foreclosure action.

79. Accordingly, there was no contractual or legal basis for Defendant to attempt to collect the Loan from Plaintiffs.

### ii. Insurance Letter

80. Defendant violated §§ 1692e(2) and (10) by falsely representing to Plaintiffs that they were responsible for payment of the property insurance that Defendant purchased on Plaintiffs' behalf.

81. Plaintiffs were not responsible for the property insurance that Defendant purchased on their behalf by virtue of (1) Plaintiffs' bankruptcy discharge, and (2) the sale of the Property and completion of the foreclosure action.

82. At the time Defendant attempted to collect the property insurance premium from Plaintiffs, there was no relationship between Plaintiff and Defendant as the Mortgage was extinguished upon completion of the foreclosure action.

83. Accordingly, there was no contractual or legal basis for Defendant to attempt to collect the property insurance premium from Plaintiffs.

### iii. Credit Reporting Threats

84. Defendant violated §§ 1682e(5) and (8) by threatening to report information regarding Plaintiffs to the credit bureaus which it knew to be false.

85. Specifically, Defendant threatened to report late and missed payments on Plaintiffs' credit reports despite the fact that Defendant knew that Plaintiffs' personal liability on the Loan was discharged in bankruptcy and that Plaintiffs were no longer the owners of the Property by virtue of the completion of the foreclosure action.

### b. Violations of 15 U.S.C. § 1692f

86. Section 1692f of the FDCPA provides:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

87. Defendant violated §§ 1692f and f(1) by attempting to collect an amount not permitted by law. Specifically, the bankruptcy discharge injunction prohibited Defendant from attempting to collect on the Loan from Plaintiffs. See 11 U.S.C. §524.

88. Defendant further violated §§ 1692f and f(1) by attempting to collect the property insurance premium from Plaintiffs as Plaintiffs were not the legal owners of the Property and thus there was no contractual or legal basis for Defendant to charge Plaintiffs for the property insurance premium it allegedly paid on Plaintiffs' behalf.

**WHEREFORE**, Plaintiffs request the following relief:

A. an order granting certification of the proposed class, including the designation of Plaintiffs as the named representatives, and the appointment of the undersigned as Class Counsel;

B. a finding that Defendant violated 15 U.S.C. §§ 1692e, e(2), e(5), e(8), e(10), f, and f(1);

C. an order enjoining Defendant from further violations of 15 U.S.C. §§ 1692e, e(2), e(5), e(8), e(10), f and f(1);

D. an award of actual damages sustained by Plaintiffs as a result of Defendant's violations;

E. an award of such amount as the Court may allow for all class members, not to exceed the lesser of $500,000 or 1 per centum of the net worth of Defendant;

F. an award of such additional damages to each Plaintiff, as the Court may allow, but not exceeding $1,000 pursuant to 15 U.S.C. §1692k(a)(2)(A);

G. an award of reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

H. any further relief this Court deems just and proper.

## COUNT II:
### Violations of the Discharge Injunction (11 U.S.C. § 524 *et seq*.)
### (On behalf of Plaintiffs and the Members of Putative Class)

89. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

90. Pursuant to 11 U.S.C. § 524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

91. "Section 524(a)(2) enjoins any act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001).

92. Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy laws." *In re Vazquez*, 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998). Punitive damages of four to ten times the amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id*.

93. Defendant violated the discharge injunction by brazenly attempting to collect the discharged Loan despite the fact that it had actual knowledge of Plaintiffs' bankruptcy discharge and after the Property was sold through the foreclosure action.

94. Defendant's conduct is especially egregious and willful in light of the fact that Plaintiffs have already brought multiple lawsuits against Defendant for the identical conduct complained of herein.

95. Defendant had actual knowledge that the Loan was discharged in Plaintiffs' bankruptcy as it had been subject to previous litigation involving post-discharge collection activity and thus Defendant should have flagged the Loan to prevent further collection activity.

96. Instead, undeterred by the discharge injunction and previous litigation, Defendant continued its brazen efforts to collect the discharged Loan.

97. Defendant's conduct demonstrates that it is a recidivist that simply refuses to honor Plaintiffs' rights and the protections afforded by the Bankruptcy Code.

98. Defendant's conduct further demonstrates that it has no policies and procedures in place to comply with the mandates of the Bankruptcy Code.

99. Defendant's pattern and practice of regularly violating the discharge injunction in disregard of the Bankruptcy Code demonstrates egregious behavior in arrogant defiance of the Bankruptcy Code and its mandates.

100. Accordingly, significant punitive damages are warranted to punish Defendant for its egregious violations of the discharge injunction and to deter Defendant from future misconduct.

**WHEREFORE**, Plaintiffs request the following relief:

A. an order holding Defendant in civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§ 524 and 105;

B. an order compelling Defendant to update its internal records to reflect Plaintiffs' bankruptcy discharge and to cease collection activity on the Loan;

C. an order awarding Plaintiffs compensatory damages in an amount no less than $10,000.00 for Defendant's civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§ 524 and 105;

D. an order awarding Plaintiffs punitive damages in an amount no less than $20,000.00 for Defendant's civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§ 524 and 105;

D. an order granting certification of the putative class, including the designation of Plaintiffs as the named representatives, and the appointment of the undersigned as Class Counsel;

E. an order awarding the putative class members compensatory damages in an amount to be determined at trial after class certification and after members of the putative class are identified;

F. an order awarding the putative class members punitive damages in an amount to be determined at trial after class certification and after members of the putative class are identified; and

G. any further relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: June 25, 2020

Respectfully Submitted,

/s/ *Mohammed O. Badwan*

Mohammed O. Badwan, Esq.
Joseph S. Davidson, Esq.
Victor T. Metroff, Esq.
*Counsel for Plaintiffs*
Sulaiman Law Group, Ltd.
Lombard, IL 60148
Phone (630)575-8180
Fax: (630)575- 8188
mbadwan@sulaimanlaw.com
jdavidson@sulaimanlaw.com
vmetroff@sulaimanlaw.com